# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PETER POTOTSKY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ATLAS AIR, INC., et. al., )<br>)<br>Defendants. )<br>_____ ) | No. CV 06-225-FRZ-CRP<br><br>**REPORT AND**<br>**RECOMMENDATION** |

Pending before this Court is Defendant Atlas Air's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(b). (Doc 115). Plaintiff filed a Response to the Motion for Summary Judgment and a Supplement to that Response. (Docs 159, 140). Defendant replied to both responses. (Docs 137, 157). Defendant's Statement of Facts were filed with its Motion for Summary Judgment. (Doc 116). Plaintiff filed three sets of Statement of Facts. (Docs 160, 155, 156).

Pursuant to the Rules of Practice in this Court, the matter was assigned to Magistrate Judge Pyle for a Report and Recommendation. (Doc 21). The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order granting Defendant's motion for summary judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff initiated this action in state court and Defendant removed the case to federal court in May 2006. (Doc 1). Plaintiff subsequently twice requested to amend his complaint. This Court granted, in part, Plaintiff's request to file his Second Amended Complaint. (Doc 64). The Court did not permit Plaintiff to add claims and defendants unrelated to the initial cause of action, including claims referring to "hate based actions." Specifically, the Court did not permit Plaintiff's amendments in paragraphs 17 through 22 of his lodged Second Amended Complaint. (Doc 64). The Court did allow paragraphs 1 through 16. (Doc 64). By order of this Court, the Clerk filed Plaintiff's Second Amended Complaint on January 30, 2007. (Doc 65). Defendant answered the Amended Complaint in February 2007. (Doc 67).

In the Second Amended Complaint, paragraphs 1 through 16, Plaintiff alleges several claims against his employer, Defendant Atlas Air. Plaintiff contends Defendant is responsible for the nonpayment or delayed payment of medical claims made by Plaintiff and Plaintiff's daughter and that Defendant harassed Plaintiff such that he avoided medical treatment. Plaintiff alleges that he had a medical condition that worsened because he avoided treatment and the worsened condition resulted in the loss of his medical certificate and job. (Doc 51, pp 2-3). Plaintiff further alleges Defendant fraudulently sold Plaintiff a "loss of license" insurance policy through the Harvey Watt Company ("Harvey Watt") by not forwarding his premiums to Harvey Watt. (Doc 51, p 3). Plaintiff also argues Defendant retaliated against Plaintiff for his union involvement and initiated a tax levy against his wages from the California Franchise Tax Board. (Doc 51, pp 3-4).

In its Answer to Plaintiff's Second Amended Complaint, Defendant denied the allegations. (Doc 67). Defendant subsequently deposed Plaintiff and engaged in additional discovery. (Doc 83). Defendant then filed its Motion for Summary Judgment on October 5, 2007. (Doc 115). In its Motion, Defendant contends the Court should grant summary judgment in favor of Defendant because (1) ERISA preempts Plaintiff's claims of extra-contractual damages such as Plaintiff's personal and emotional injury due to Defendant's alleged delay or nonpayment of his health benefit claims; (2) Plaintiff has failed to provide

any evidence of unpaid health benefit claims under his insurance plan with Defendant; (3) Plaintiff fails to state a claim for relief regarding Defendant's alleged failure to forward Plaintiff's premiums to Harvey Watt for loss of license insurance and that any claims associated with the Harvey Watt loss of license policy are preempted by the Railway Labor Act ("RLA"); and (4) Plaintiff failed to produce evidence that Defendant retaliated against him for his union activities or improperly obtained a tax levy against Plaintiff's wages.

In Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff cited no law but adamantly objected to Defendant's Motion. (Doc 159). Plaintiff's Response makes numerous allegations but provides little substantive response to Defendant's Motion. Both sides presented a statement of facts; in fact, Plaintiff submitted three statements of facts. (Docs 116, 160, 155, 156). Plaintiff later filed a Supplement to his Response that also contained no law and numerous objections. (Doc 140).

For the purposes of Defendant's Motion for Summary Judgment and based on the pleadings submitted by the parties, the Court finds the following facts relevant to resolution of the Motion: Plaintiff was employed by Defendant Atlas Air from July 1999 to May 2006. (Doc 160, ¶ 1). The other facts are organized as they related to Plaintiff's specific claims in his Second Amended Complaint.

***Plaintiff's Claims Associated with his Health Benefit Plan***

The health benefit plan under which Plaintiff is suing Defendant was established and maintained by Defendant Atlas Air for the purpose of providing medical, prescription and dental benefits to Defendant's employees and their beneficiaries. (Doc 116, ¶¶ 2, 3, Exs. 1-2). The plan is an "employee welfare benefit plan" as that term is defined in the Employee Retirement Income Security Act ("ERISA") at 29 U.S.C. § 1002(1). (Doc 116, ¶ 3). The summaries of the dental, medical and prescription drug plans describe it as an ERISA-governed plan. (Doc 116, Ex. 1).

During some undefined time, likely between the years 2005 through 2006, Plaintiff had difficultly with CIGNA and/or Defendant not paying or delaying in the payment of his undetermined medical claims as well as his daughter's undetermined claims. (Doc 116, ¶¶

4-7; Doc 160, ¶¶ 12-14, 17). Plaintiff contends the alleged delay or nonpayment of his health benefit claims are fraud and racketeering in addition to ERISA claims. (Doc 155, ¶ 1). During the discovery phase of this case, Defendant made numerous attempts to gather information about any remaining unpaid claims. (Doc 116, ¶¶ 9, 10, 11).

When Defendant deposed Plaintiff in May 2007, defense counsel requested Plaintiff identify all remaining outstanding health benefit claims. (Doc 116, ¶¶ 9-13). Generally, Plaintiff contends Defendant should be responsible for providing evidence of these alleged claims. (Doc 155, ¶ 3). In his deposition, the only claim Plaintiff could identify was a treatment on May 18, 2006 that remained unpaid. (Doc 116, Ex. 3, pp 17, 19). When asked by defense counsel at the deposition, Plaintiff agreed that if served with an interrogatory, he would provide information on the unpaid claim. (Doc 116, Ex. 3, pp 17, 19). Defendant served an interrogatory on Plaintiff requesting information about the unpaid claim, but Plaintiff did not respond. (Doc 116, ¶¶ 10, 11). In his response to Defendant's contention that it sought information on this alleged claim, Plaintiff states "Oh, OH! Getting close to Atlas' setting this up for a stinkin' killer LIE." (Doc 155, ¶ 9) (emphasis in original). Plaintiff further states that he provided Defendant with all the information he had regarding the May 18, 2006 alleged claim and that in response to Defendant's Non-Uniform Interrogatory No. 1, Plaintiff provided Defendant "with everything they asked for..." (Doc 155, ¶¶ 10-11). To refute Defendant's contention that it did not receive information from Plaintiff about alleged outstanding health benefit claims, Plaintiff does not provide any evidence; he simply states that he has provided the information. (Docs 160, 155, 156).

Plaintiff never provided Defendant with any information regarding alleged unpaid claims and he has not provided this Court with evidence of any unpaid claims, nor evidence of delayed claims. (Doc 116, ¶ 11). In fact, as Defendant points out and Plaintiff does not dispute, Plaintiff's claims were paid "but only after an extraordinary effort." (Doc 116, ¶ 4, *quoting* Plaintiff's Second Amended Complaint, Doc 65, ¶¶ 8, 10). Plaintiff argues the outstanding claims were "paid only AFTER [Plaintiff] filed a complaint and this suit." (Doc 155, ¶ 4). Plaintiff does not provide documentation with dates showing when any alleged

1  health benefit claims were paid. (Docs 160, 155, 156). In one instance, Plaintiff asserts it
2  took "almost a year to achieve payment." (Doc 116, ¶ 6, quoting Plaintiff's Second
3  Amended Complaint, Doc 65, ¶ 10). Plaintiff does not contend there are any unpaid claims
4  under Defendant's dental plan. (Doc 116, ¶ 13; Doc 155, ¶ 13).

5        Plaintiff alleges numerous consequences of Defendant's alleged failure to pay or
6  delayed payment of his medical claims. In his Second Amended Complaint, Plaintiff alleges
7  that at least three health benefit claims were sent to a collection agency. (Doc 51, ¶ 8).
8  Plaintiff has not provided this Court with any evidence in his statement of facts to show
9  alleged unpaid or delayed payment claims negatively impacted his credit. (Docs 116, 156,
10 160). Plaintiff also alleges unidentified health conditions worsened as a result of Defendant's
11 alleged delay or failure to pay Plaintiff's health benefit claims. (Doc 51, ¶¶ 10-11). Plaintiff
12 has not provided this Court with evidence in his statement of facts of any worsening medical
13 or dental condition of himself or his daughter as a result of alleged delay or failure to pay
14 health benefit claims. (Docs 116, 156, 160). No doctor has told Plaintiff that a medical
15 condition which caused him to lose his medical certificate was worsened by a delay in
16 treatment. (Doc 116, Ex. 3, pp 69, 72).

17       Plaintiff also alleges Defendant denied or delayed in paying medical claims of
18 Plaintiff's daughter which had severe consequences on his daughter's physical and emotional
19 well-being. (Doc 51, ¶¶ 9). Defendant states and Plaintiff does not contest that Plaintiff's
20 daughter is an adult and is not a party to this lawsuit. (Doc 116, ¶¶ 16-17). Plaintiff states
21 he is not suing on behalf of his daughter, but rather, using her alleged health benefit claims
22 as evidence to support his fraud and racketeering claims. (Doc 155, ¶ 5). Plaintiff also
23 contended Defendant used its insurance programs to intimidate its workers, including
24 Plaintiff, into not submitting claims. (Doc 51, ¶¶ 12). Plaintiff has not provided evidence
25 that Defendant intimidated him or other workers into not submitting claims. (Docs 116, 156,
26 160).

27 ***Plaintiff's Alleged Harvey Watt Loss of License Insurance Coverage Claim***

28       Defendant offered its employees disability and loss of license insurance administered

by Harvey Watt Insurance Company sometime around the year 2000. (Doc 160, ¶ 2; Doc 116, Ex. 3, p 87). Plaintiff completed the application for a loss of license policy and Defendant began deducting premiums for the policy from Plaintiff's wages. (Doc 160, ¶2). Plaintiff believed he was covered by a loss of license insurance policy from Harvey Watt for the period of approximately 2000-2003. (Doc 116, ¶ 26, Ex. 3, p 95; Doc 155 ¶ 26). Around June 2003, Plaintiff learned that Defendant had failed to forward his premiums to Harvey Watt and that in fact, Plaintiff did not have loss of license insurance. (Doc 160, ¶ 4). During the time Plaintiff believed he was covered by Harvey Watt under a loss of license insurance policy, Plaintiff never made a claim and had no reason to do so. (Doc 116, Ex. 3 p 89).

Upon discovering that Defendant failed to obtain insurance policies from Harvey Watt for a number of employees, the Air Line Pilots Association ("ALPA") entered into an agreement with Defendant in which Defendant agreed to refund the amount deducted from employees' wages for the policies that were never obtained. (Doc 116, Ex. 12). Plaintiff disputes the validity of the agreement, which was contained in a letter signed by James Cato, Vice President Flight Operations and Labor Relations for Defendant, and Captain David Bourne, Master Chairman, Council 72 for ALPA. (Doc 116, Ex. 12). Plaintiff contends the letter was an "agreement to hide [Defendant's] FRAUDULENT actions." (Doc 156, p 1) (emphasis in original). In the document titled "Additional Exhibits to Statement of FACTS", Plaintiff claims the letter was not binding because Defendant never published the agreement on the company's website and the agreement was not submitted to the National Mediation Board to be included in the records. (Doc 156, p 1; Doc 155 ¶ 29). Plaintiff does not cite any regulations or rules requiring a letter of agreement to be published on the company's website or submitted to the National Mediation Board. (Docs 160, 156). Per that agreement, Plaintiff received a refund from Defendant totaling $1,267.20. (Doc 116, Exs. 10-11). The refund was in two payments, one made in June 2003 and another payment prior to May 28, 2004. (Doc 116, Exs. 10-11). Plaintiff does not dispute that he received the refund, although Plaintiff argues he is unsure how much money Atlas deducted from his wages for the premiums. (Doc 155, ¶ 27).

Around June 2003, when Plaintiff realized he was not covered by loss of license insurance, he was notified that the original policy offered by Harvey Watt was no longer available but that a different one was available. (Doc 160, ¶¶ 4-5). The new policy required a physical examination from a "porta medic" who would travel to Plaintiff's house. (Doc 160, ¶ 5). Plaintiff was not comfortable having a physical examination conducted by "some unknown van driver entering my house wielding needles." (Doc 160, ¶ 5). Plaintiff does not claim that he completed the required examination nor that he purchased a new insurance policy. (Doc 160). Plaintiff knew that he did not have loss of license insurance under Harvey Watt in May 2006. (Doc 116, ¶ 24).

In May 2006, Plaintiff lost his medical certificate because of a medical condition and he was unable to fly. (Doc 116, ¶ 24, Ex. 3, p 87; Doc 160, ¶ 7). Plaintiff contends he was diagnosed with this medical condition around June 2003 and that he chose not to take the prescribed medication but rather to use natural remedies so that he could continue flying. (Doc 160, ¶ 6). Plaintiff does not provide any evidence that a doctor diagnosed him with this medical condition at anytime before May 2006. (Doc 160). No doctor has told Plaintiff that the medical condition which caused him to lose his medical certificate was worsened by a delay in treatment. (Doc 116, ¶ 20, Ex. 3, p 69). Plaintiff states that "[a]s a pilot, I have received substantial training in physiological conditions which affect the ability to fly. As such, I have the expertise to be able to determine what a grounding condition is and when I should not fly." (Doc 155, ¶ 20). Plaintiff contends the preceding statement is supported by his FAA certified Flight Surgeon's statement to Plaintiff that "if a pilot doesn't know when NOT to fly, who does??" (Doc 155, ¶ 20) (emphasis in original). The Harvey Watt loss of license insurance policy was not in effect in May 2006 when Plaintiff lost his medical certificate. (Doc 116, ¶ 23, Ex. 3, p 87).

*Plaintiff's Alleged Claims of Retaliation*

Plaintiff alleges Defendant retaliated against him by harassing Plaintiff because of his union activities, and initiating a tax levy against Plaintiff with the State of California. (Doc 51, ¶¶ 15, 16). In July 2007, Defendant served interrogatories on Plaintiff which included

requests that Plaintiff provide information that supports Plaintiff's claims that Defendant harassed Plaintiff because of his union activities and that Defendant initiated a tax levy against him with the State of California. (Doc 116, ¶ 14, Ex. 7). After Plaintiff failed to respond to the interrogatories, Defendant twice more in written communication with Plaintiff requested that Plaintiff respond to the interrogatories. (Doc 116, ¶ 15, Exs. 8, 9). Plaintiff did not respond. (Doc 116, ¶ 15). Plaintiff contends evidence of these claims "were all covered FULLY in the deposition" and "by the numerous briefs submitted to this Court." (Doc 155, ¶ 14) (emphasis in original).

In June 2004, Atlas payroll notified Plaintiff that the California Franchise Tax Board had placed a levy on Plaintiff's wages. (Doc 160, ¶ 8). When Plaintiff contacted the payroll department, Plaintiff states that someone in the department told him his wages were not subject to California taxes but that there was nothing that Defendant could do to stop the levy. (Doc 160, ¶ 9). Defendant was reporting Plaintiff's wages taxable to the State of California for the years 2001 and subsequent. (Doc 160, ¶ 10; Doc 155, ¶ 14). Plaintiff talked to the California Franchise Tax Board and it withdrew the tax levy but then in June 2005 again instituted a levy against Plaintiff's wages. (Doc 160, ¶¶ 10-11). The person in payroll again told Plaintiff that there was nothing Defendant could do to stop the levy. (Doc 160, ¶ 11). Plaintiff states the "union insisted on the company signing a letter of agreement to prevent future occurrences of these events with me and many other employees similarly affected. Atlas refused." (Doc 160, ¶ 11).

**STANDARD OF REVIEW**

Summary judgment is proper if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party must produce evidence and persuade the court there is no geniune issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir.2000). To defeat a motion for summary judgment, the nonmoving party must show that there are genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is one that might affect the outcome of the suit under the

1 governing law. *Id.* at 248. A factual issue is genuine "if the evidence is such that a
2 reasonable jury could return a verdict for the nonmoving party." *Id.*

3 The party seeking summary judgment bears the initial burden of informing the court
4 of the basis for its motion and identifying those portions of the pleadings, depositions,
5 answers to interrogatories, and admissions on file, together with the affidavits, if any, which
6 it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v.*
7 *Catrett*, 477 U.S. 317, 323 (1986). The nature of this responsibility varies, however,
8 depending on whether the moving party or the nonmoving party would bear the burden of
9 proof at trial on the issues relevant to the summary judgment motion. If the nonmoving party
10 would bear the burden of persuasion at trial, the moving party may carry its initial burden of
11 production under Rule 56(c) by producing "evidence negating an essential element of the
12 nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving
13 party does not have enough evidence of an essential element of its claim or defense to carry
14 its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1105-1106; *High Tech*
15 *Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir.1990).

16 When the moving party has carried its burden under Rule 56(c), the nonmoving party
17 must produce evidence to support its claim or defense by more than simply showing "there
18 is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith*
19 *Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record, taken as a whole, could not lead
20 a rational trier of fact to find for the nonmoving party, there is no genuine issue of material
21 fact for trial. *Matsushita*, 475 U.S. at 586.

22 In the context of summary judgment, the court presumes the nonmoving party's
23 evidence is true and draws all inferences from the evidence in the light most favorable to the
24 nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th
25 Cir.1987). If the nonmoving party produces direct evidence of a genuine issue of fact, the
26 court does not weigh such evidence against the moving party's conflicting evidence, but
27 rather submits the issue to the trier of fact for resolution. *Id*. Each numbered paragraph of
28 the moving party's separate statement of facts shall be deemed admitted for purposes of the

motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts. LRCiv 56.1(b).

**DISCUSSION**

*Plaintiff's Claims Associated with his Health Benefit Plan*

Defendant filed its Motion for Summary Judgment arguing any claims that would be defined as "extra-contractual damages" are preempted under ERISA and that any allegedly unpaid health benefit claims lack sufficient evidence to state a claim. Plaintiff responds that ERISA does not preempt his claims because his insurance policy never existed. (Doc 140, p 2). With respect to unpaid health benefit claims, Plaintiff places the responsibility for providing evidence of those claims on Defendant. (Doc 159, p 4). Plaintiff argues he requested Defendant to provide copies of claims and in response, Defendant has "seriously implied that no denials were ever made." (Doc 159, p 5). Plaintiff contends Defendant's argument that there are no outstanding claims is false and that Defendant, to hide its fraud, may "get some poor 'legal liaison' to sign a sworn statement provided to this Court. Whether its [sic] some poor secretary or an old drunk, defendant will come up with a way to put blame on to someone else-hell a scapegoat is almost as good as a job well done!" (Doc 159, p 5).

This Court begins with analyzing whether Defendant's health benefit plan was governed by ERISA and if it was, whether ERISA precludes Plaintiff's claims for extra-contractual damages. The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person. *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir.1988), *cert. denied*, 492 U.S. 906 (1989).

To determine whether an insurance plan is an ERISA plan, a court should consider 29 U.S.C. § 1002(1), which defines an employee welfare benefit plan, and 29 C.F.R. § 2510.3-1(j), which excludes certain group insurance programs from ERISA's definition of employee welfare benefit plan. *Id*. *See also Harper v. American Chambers Life Ins. Co.*, 898 F.2d 1432, 1433 (9th Cir.1990) (internal citations omitted). An employee welfare benefit

plan is defined, in part, as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability death or unemployment.

29 U.S.C. § 1002(1). As defined by 29 C.F.R. § 2510.3-1(j) an employee welfare benefit plan does not include:

> a group insurance program offered by an insurer to employees or members of an employee organization, under which (1) no contributions are made by an employer or employee organization; (2) participation [in] the program is completely voluntary for employees or members; (3) the sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer.

Behavior inconsistent with any one of the above criteria would constitute evidence of the establishment of a plan. *Silvera v. Mutual Life Ins. Co. of New York*, 884 F.2d 423, 426 (9th Cir.1989), *citing Kanne*, 867 F.2d at 492.

Here, the group insurance that Defendant provided to its employees, including Plaintiff, was a employee welfare benefit plan. Defendant was an employer, and maintained its insurance program for the purpose of providing its employees with medical insurance and other health benefits. The plan summaries submitted by Defendant state that the "cost of the Plan is shared by the Employee and the Employer." (Doc 116, Ex. 1, pp 23, 44). Defendant's contribution to the plan constitutes establishment of a plan.

Plaintiff argues the health benefits plan was not governed by ERISA because the insurance policy did not exist. (Doc 140, p 2). This assertion cannot be correct because Plaintiff acknowledged in his Second Amended Complaint and his deposition that all of his medical claims and dental claims have been paid. Plaintiff also argued in his Second Amended Complaint that he was suing pursuant to his rights under ERISA, in addition to state claims of fraud and racketeering. (Doc 65, ¶ 7). Defendant's health benefit plan is governed by ERISA.

Under ERISA's civil enforcement provisions, a participant or beneficiary may bring

1  an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify this rights to future benefits under the terms of the plan." 29 U.S.C. § 1132. Actions under ERISA's civil enforcement provisions, however, do not permit recovery of extra-contractual damages. *Sokol v. Bernstein, M.D.*, 803 F.2d 532, 537 (1986), *overruled on other grounds by Firestone Tire & Rubber Co. V. Bruch*, 489 U.S. 101, 108 (1989).

Plaintiff contends he suffered severe consequences due to Defendant's alleged delayed or denial of payment for his health benefit claims. Some of those severe consequences include Plaintiff allegedly losing "family doctor of nearly 15 years", "severe consequences on [daughter's] physical and emotional well being" because of alleged delay or denial of her claims under the insurance plan, exacerbated dental problems because "Plaintiff avoided going to the dentist for fear that excessive bills would accumulate and the shame of having unpaid bills", worsening medical condition that "finally resulted in loss of [Plaintiff's] medical certificate and job loss." (Doc 65, ¶¶ 8-11). These alleged claims are extra-contractual damages and actions under ERISA's civil enforcement provisions do not permit recovery. The District Court should grant Defendant's summary judgment on these claims.

In its Motion for Summary Judgment, Defendant also asserts that Plaintiff's health benefit claims are governed by ERISA and any state law under which Plaintiff could bring those claims is preempted by ERISA. Plaintiff does not offer a legal argument to oppose Defendant's position, but rather, offers a general contention that Defendant's alleged failure to pay or delayed payment of his claims is fraud and racketeering.

Plaintiff's health benefit claims allege Defendant improperly processed those claims. ERISA regulates the handling and disposition of health benefit claims. *Russell v. Massachusetts Mut. Life Ins. Co.*, 722 F.2d 482, 488 (9th Cir.1983), *rev'd on other grounds*, 473 U.S. 134, 138 n.4, 148 (1985). ERISA's civil enforcement provisions are the exclusive remedy for a participant or beneficiary alleging improper claim processing. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 216 (2004). The Magistrate Judge recommends that the District Court find ERISA preempts any state causes of action associated with Plaintiff's health

benefit claims.

Defendant also argues Plaintiff has failed to show he has any outstanding health benefit claims. As previously outlined, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party may meet its burden for summary judgment by "showing that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Matsushita*, 475 U.S. at 586.

Plaintiff has the burden to show the existence of outstanding health benefit claims. Defendant inquired into these claims numerous times. Defendant asked Plaintiff about these claims in Plaintiff's deposition and then followed up its questions at the deposition with interrogatories. Plaintiff has not provided any information about outstanding claims. Plaintiff also stated numerous times in his Second Amended Complaint that his health benefit claims were paid. Plaintiff argues that Defendant is at fault for failing to provide Plaintiff with information about all alleged outstanding claims. The burden is not on Defendant. Defendant asserted in its statement of facts that there were no outstanding health benefit claims. Defendant made this assertion after it pursued further information from Plaintiff regarding Plaintiff's only assertion of a specific outstanding medical claim arising from May 18, 2006. Plaintiff did not provide any information on this claim and Defendant presented evidence that CIGNA Healthcare paid that claim the day after it was received.

After both parties submitted their statements of facts for Defendant's Motion for Summary Judgment, Plaintiff filed a Supplement to Motions to Compel addressing a separate motion. (Doc 128). In Plaintiff's Supplement, he argued the evidence that Defendant submitted to support its assertion that the May 18, 2006 claim was paid was "so misleading, so inaccurate, and so full of crap, that it requires a complaint to the Pennsylvania Attorney General requesting a perjury investigation." (Doc 128, p 2). Attached as exhibits to Plaintiff's Supplement are three unidentified pages that appear to be part of a bill or account

- 13 -

statement from Pueblo Medical Clinic. (Doc 128, Ex. 1, 2, 3). On the final page, titled "Statement of Account" a balance due is shown as $65.00. (Doc 128, Ex. 3). The Court is not in a position to determine if this balance was later paid, as the page is dated July 18, 2006, nor whether Plaintiff, Defendant or the insurance company was responsible for paying this balance. There is no evidence that Defendant was required to pay the alleged outstanding claim. Plaintiff has not provided the Court with any description of this page nor how this page supports a health benefit claim. Furthermore, Plaintiff did not provide this page as evidence or cite it as evidence in his Statement of Facts, Numbered Statement of Facts, or Additional Statement of Facts to the pending Motion for Summary Judgment. A rational trier of fact could not find for the Plaintiff on a health benefit claim related to this page in Document 128 as it was presented to the Court.

Plaintiff has not presented evidence which would lead a rational trier of fact to find for Plaintiff on any alleged health benefit claims. The Magistrate Judge recommends that the District Court grant Defendant's Motion for Summary Judgment on any alleged health benefit claims.

### *Plaintiff's Alleged Harvey Watt Loss of License Insurance Coverage Claim*

Plaintiff alleges Defendant fraudulently deducted premiums from his wages for a Harvey Watts loss of license insurance policy that it never obtained for Plaintiff. Plaintiff believed he was insured from approximately 2000 through 2003 under this policy. Defendant asks this Court to grant summary judgment on any claims associated with the Harvey Watt loss of license insurance because those claims are either preempted by the RLA or in the alternative, Plaintiff failed to state a claim for relief.

The RLA was enacted "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252-257 (1994). To this end, Congress created a mandatory arbitration process to promptly and orderly settle minor disputes. *Id*. at 252. Minor disputes arise "out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Id*. at 252-253. Minor disputes also involve

"controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Trainmen v. Chicago R. & I.R. Co.*, 353 U.S. 30, 33 (1957). These disputes essentially involve "disputes invoking contract-based rights." *Hawaiian Airlines*, 512 U.S. at 254 (dicta).

It is unclear to this Court whether Plaintiff's alleged Harvey Watt loss of license claim is a minor dispute that would be preempted by the RLA. Defendant contends it is a minor dispute because Plaintiff was a member of the union and the loss of license insurance was a benefit derived from a collective bargaining agreement. This may be true, but Defendant has not submitted any evidence that the loss of license insurance was the result of a collective bargaining agreement.

Defendant also asserts that when Defendant learned of the Harvey Watt insurance discrepancies, it entered into a letter of agreement with ALPA, the pilots' union, to resolve the situation. Defendant further contends Plaintiff was a beneficiary of that agreement as he received a full refund of the premiums he paid toward loss of license insurance. Defendant offers a letter signed by Defendant's representative, James Cato, and ALPA representative, Captain David Bourne. (Doc 116, Ex.12). Plaintiff adamantly contests that ALPA and Defendant entered into a letter of agreement. (Docs 156). Plaintiff argues the agreement does not follow proper procedure and cannot be a letter of agreement.

On the facts presented, a rational trier of fact would not know whether the agreement between James Cato and David Bourne was a letter of agreement in which Plaintiff would derive rights and therefore his claims would be preempted under the RLA. A rational trier of fact deciding whether Defendant offered this loss of license insurance as a result of a collective bargaining agreement could decide in favor of either party based on the evidence presented. Therefore, the Magistrate Judge recommends that the District Court deny Defendant's Motion for Summary Judgment on the argument that the RLA preempts Plaintiff's Harvey Watts loss of license insurance claims.

Defendant contends, in the alternative, that Plaintiff has not stated a claim for relief because he cannot prove all the elements of fraud. Actionable common law fraud requires

a plaintiff suffer some type of injury to assert a claim. *Equitable Life & Casualty Ins. Co. v. Lee*, 310 F.2d 262, 267 (9th Cir.1962). In this case, Plaintiff admits that he never made a claim nor needed to make a claim during the time he believed he was insured under Harvey Watt's loss of license insurance. Defendant also gave its employees, including Plaintiff, the opportunity to obtain other loss of license insurance after it was discovered that they were not covered. Plaintiff began the process of obtaining other insurance but did not complete the process because it required a physical from a "porta medic" and Plaintiff was not comfortable having a physical examination conducted by "some unknown van driver entering my house wielding needles." (Doc 160, ¶ 5). Furthermore, Defendant refunded the premiums it deducted from Plaintiff's wages for the loss of license insurance.

Plaintiff did eventually have a medical condition that prevented him from flying in May 2006. Yet, Plaintiff acknowledged that he discovered he was not insured by Harvey Watts in June 2003. Plaintiff's medical conditions occurring over three years later are not actionable claims based on a policy he believed he had from 2000 through 2003. Plaintiff also alleges that the medical condition that prevented him from flying was presented in 2003 and worsened over time. Other than asserting that he was in a position to determine for himself when his condition presented, Plaintiff has not offered any evidence to support this allegation and a rational trier of fact would not find for Plaintiff on this issue.

Moreover, it is undisputed that Plaintiff was offered insurance but refused to take the physical. Had he taken the physical and a pre-existing condition been determined, Plaintiff may well have established damages for failing to issue the Harvey Watt loss of license insurance. But, he did not take the physical and this Court cannot speculate about what might have happened. It was not Defendant's obligation to force Plaintiff to take the physical and determine irrefutably whether he could obtain equivalent insurance to the loss of license coverage he thought he had. To establish injury, Plaintiff needed to cooperate with Defendant's efforts to provide the denied coverage.

The Magistrate Judge recommends that the District Court grant Defendant's Motion for Summary Judgment on all claims associated with Plaintiff's Harvey Watts loss of license

1 insurance.

*Plaintiff's Alleged Claims of Retaliation*

Plaintiff alleges Defendant retaliated against him by harassing Plaintiff because of his union activities and initiating a tax levy against Plaintiff with the State of California. Defendant asks the Court grant summary judgment on these claims, arguing Plaintiff failed to articulate evidence of these claims.

As previously discussed, a party moving for summary judgment bears the burden of production and that party may carry the burden by showing "that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1106. Once the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence to support its claim or defense. *Id*. at 1103. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment. *Id*.

Through interrogatories, Defendant requested Plaintiff provide Defendant with specific information on his alleged retaliation claims. After Plaintiff failed to respond to the initial interrogatories, Defendant twice more in written communications requested that Plaintiff respond to the interrogatories and provide requested information. Plaintiff never responded. Defendant stated in its Statement of Facts that Plaintiff failed to produce any evidence of retaliation for his union activities. Plaintiff argues he provided all the evidence that was necessary in his deposition. The Court finds no evidence of retaliation for Plaintiff's union activities.

Defendant also stated in its Statement of Facts that Plaintiff failed to provide any evidence of retaliation related to the California state tax levy. In his Response to Defendant's Motion for Summary Judgment and in three sets of Statements of Facts, Plaintiff makes multiple assertions about Defendant's role in the State of California tax levy against Plaintiff's wages. (Docs 159, 160, 156). Plaintiff describes Defendant's role in the tax levy as the following: "defendant also enamored their arsenal of dirty tricks by getting a more than

willing fellow bankrupt entity, the State of California, to do defendant's bidding." (Doc 159, p 9). In his Response, Plaintiff also includes an alleged email from the payroll manager for Defendant in which the manager informs Plaintiff that the tax withholdings "are being made pursuant to a legitimate order by the State of California" and "the Company [Defendant] has no discretion in this matter." (Doc 159, p 9). The payroll manager proceeds to tell Plaintiff that she contacted the California state department issuing the levy and confirmed "the applicability of the California tax withholdings to [Plaintiff's] situation." (Doc 159, p 9).

Plaintiff appears to believe the above information from Defendant's payroll manager is proof that Defendant retaliated against Plaintiff by initiating a tax levy against him. In his first Statement of Facts, Plaintiff also identifies the amount of money levied from his wages and again notes the information from Defendant's payroll manager, informing Plaintiff that there was nothing Defendant could do to stop the withholdings. (Doc 160, ¶¶ 8-11). Plaintiff also states that the State of California informed him that Defendant was reporting Plaintiff's wages as taxable to California for the years "2001 and subsequent." (Doc 160, ¶ 10). The evidence Plaintiff offers shows Defendant withheld money from Plaintiff's wages for tax levies placed on Plaintiff's wages by the State of California. The evidence does not show that Defendant withheld this money to retaliate against Plaintiff. Defendant had no authority to ignore the tax levy.

There is no evidence in the record of Defendant retaliating against Plaintiff because of Plaintiff's union activities or through a tax levy from the State of California. The Magistrate Judge recommends that the District Court grant Defendant's Motion for Summary Judgment on Plaintiff's claims of retaliation.

**RECOMMENDATION**

It is the recommendation of the Magistrate Judge that the District Court, after its independent review and analysis, GRANT Defendant's Motion for Summary Judgment (Doc 115) and DISMISS WITH PREJUDICE the claims alleged against Defendant Atlas Air.

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 10 days after being served with a copy of this Report and Recommendation. If objections

are not timely filed, the party's right to de novo review may be waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003) (en banc), *cert. denied*, 540 U.S. 900 (2003). If objections are filed, the parties should direct them to the District Court by using the following case number: **CV 06-225-TUC-FRZ.**

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 7th day of October, 2009.

_____
**CHARLES R. PYLE**
UNITED STATES MAGISTRATE JUDGE